**V. I. P. INVESTMENT CORPORATION, a corporation of Dallas, Texas, Appellee,**

v.

**Johnnie L. MAYES, Appellant.**

**No. 48808.**

Supreme Court of Oklahoma.

July 26, 1977.

**5.** *State of Oklahoma ex rel. Poulos v. State Board of Equalization*, 552 P.2d 1134, 1137 (Okl.1975).

Lloyd E. Cole, Jr., Stilwell, for appellee.

Gene F. Mowery, Stilwell, for appellant.

DAVISON, Justice:

In August of 1968, James L. Houston, acting as agent for the Reserve Life Insurance Company, a corporation licensed to do business in the State of Oklahoma, sold an insurance policy to appellant, Johnnie L. Mayes. The policy was sold and delivered to appellant Mayes at his residence in the State of Oklahoma. The policy issued was for a period of five years—the first year's premium was paid by means of a promissory note for $371.38; the payee designated on the note was the insurance agent, James L. Houston.

The promissory note provided among other things that:

"The holder of this note, whether original payee or an assignee may, without notice, declare the principal balance in this note plus accrued interest to be immediately due and payable if any premium due on the Life Insurance Policy concurrently assigned * * * as collateral security herefor, for the second and subsequent policy years is not paid within the policy grace period."

Mr. Mayes made no premium payment, and the assignee of the note, V.I.P. Investment Corporation of Dallas, Texas, a Texas corporation, *not domesticated* in the State of Oklahoma, brought an action on the note in the District Court of Adair County.

As a defense to the action, appellant Mayes, defendant below, demurred, by way of a speaking demurrer, asserting that the plaintiff below, V.I.P. Investment Corporation, was a foreign corporation not domesticated in the State of Oklahoma, *although doing business* within the State, and therefore under the provisions of 18 O.S.1971 § 1.201(a), was precluded from maintaining an action in any court within the State of Oklahoma. The demurrer was overruled, and Mr. Mayes chose not to stand on the demurrer, but proceeded to trial, where the trial court, acting as both trier of fact and law, entered a judgment in favor of plaintiff V.I.P. At the trial, the same defense, regarding V.I.P.'s inability to maintain a suit in Oklahoma, was again raised.

At trial, both parties stipulated as to the signing of the note, the amount owed, how and when the note was negotiated, and general terms, and the reasonableness of the attorney fees, which were provided for by the contract. The only issue presented at trial, and the only issue presented in this appeal, is whether V.I.P. was precluded from bringing an action in this State by the provisions of 18 O.S.1971 § 1.201(a). That statute provides:

"Any foreign corporation which has engaged in or transacted, or is engaging in or transacting, business within this State, either before it shall have become domesticated or after its certificate of domestication has been cancelled or revoked, shall not be permitted to maintain any action, brought by itself or its successor

or assignee, in any court of this State until a certificate of domestication, or another such certificate, as the case may be, has been issued to such corporation. The failure, however, of such corporation to become domesticated before engaging in or transacting business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent it from defending any action in any court of this State."

Appellee V.I.P. Investment Corporation contends that the provisions of the above quoted statute do not preclude it from bringing suit in Oklahoma, as it has never engaged in or transacted business within the State.

Conversely, appellant argues that the evidence introduced at trial, clearly demonstrated that V.I.P. has in fact been "doing business" within Oklahoma. In support of this proposition, appellant Mayes emphasizes the testimony of the appellant himself, of Mr. Frank D. Gardner and Mr. Bill J. Foster, all of whom testified that insurance agent Houston sold them an insurance policy with Reserve Life Insurance Company, that the sale took place in Oklahoma, and that as part of the sales transaction, they all executed notes payable to agent Houston, and assigned to V.I.P. Investment Corporation. Based on this, and based on the documents involved in the sales, appellant Mayes argues that V.I.P. has been "doing business" in Oklahoma. An examination of the instrument used in the "insurance sale transaction", leads us to hold that appellee V.I.P. Investment Corporation, has indeed been engaged in business within the State, for said documents, together with the testimony at the trial, unquestionably establishes that James L. Houston, in addition to acting as an agent for the insurance company, was also acting on behalf of V.I.P. Investment Corporation. The promissory note, which was also an assignment of Mr. Mayes' rights and interests in the insurance policy being sold him provided:

"PROMISSORY NOTE AND ASSIGNMENT OF INSURANCE POLICY

Dated: August 8, 1968

$371. 38/100

At: Stillwell, Oklahoma

Five (5) years from Date and for full value received, I, we, or either of us, promise and agree to pay to the order of the payee, James L. Houston, at the office of V.I.P. Investment Co. in Dallas, Texas, the sum of

THREE HUNDRED & SEVENTY-ONE & 38/100 DOLLARS     ( $371. 38/100)     ,

with interest from Date at the rate of six per cent (6%) per annum.

---

All parties to this note waive presentment for payment, notice of non-payment, protest and notice thereof, and if this note is placed with an attorney for collection after default, agree to pay, as attorney's fees, ten percent (10%) on the total then due, together with legal court costs. All parties to this note, including drawers, endorsers, and guarantors generally waive presentation for payment, notice of nonpayment, protest and notice thereof, and without further notice, hereby agree to renewals, extensions, indulgences or partial payments, either before or after maturity. The right to prepay the entire balance on this note, with interest to date of payment, at any time after 1 year from date, is reserved for Maker.

The holder of this note, whether original payee or an assignee may, without notice, declare the principal balance in this note plus accrued interest to be immediately due and payable if any premium due on the Life Insurance Policy concurrently assigned (in the following paragraph) as collateral security herefore, for the second and subsequent policy years is not paid within the policy grace period. To secure the payment of the indebtedness above described, the undersigned hereby transfer, assign and set over to the payee hereof, or his assigns, all

right, title, and interest in Policy No. Y–491–286 (I authorize the Insurance Company to insert number on filing this assignment but if no policy is issued this instrument is void) issued by Reserve Life Insurance Company, Dallas, Texas, on the basis of my application date June 5, 1968, including, without limitation, the sole right to exercise all loan privileges and to surrender said Policy to the Insurance Company for its cash surrender value at any time after default in the terms of this instrument. The rights of said assignee to the loan or cash values, and to the death benefits under said Policy shall be in all things prior and superior to the rights of the undersigned and of any Beneficiary designated in said Policy, and, any election for automatic premium loans shall be suspended by the said Company until this assignment is released. Any proceeds payable under said policy in excess of that required to discharge said indebtedness shall be payable to the Beneficiary designated in the Policy. Upon the payment of the indebtedness above described, this assignment shall be released. It is agreed that a copy of this assignment, whether or not an executed copy, may be filed with Reserve Life Insurance Company and be of the same force and effect as if a separate and original assignment of said Policy had been so filed.

THE 5TH ANNIVERSARY PAYMENT OF THE POLICY, WHEN PAYABLE, IS TO BE USED BY ASSIGNEE IN LIQUIDATION OF THIS NOTE, IF UNPAID. ANY EXCESS SHALL BE PAID TO THE MAKER.

The validity and sufficiency of this assignment are guaranteed by the undersigned. It is understood that Reserve Life Insurance Company assumes no responsibility for the validity of this assignment."

The testimony at trial indicated that at least two like notes were executed in conjunction with the sale of Reserve Life Insurance Company policies by Mr. Houston. As the note and assignment was a standard *printed* form, with both the name of the insurance company and *V. I. P. printed therein*, we think it evident that like instruments were used by Reserve Life Insurance Company agents, as a device to enable the insurance agent to sell policies to individuals who might have difficulty paying the first year's premium.

Thus, on more than one occasion, James Houston secured notes like the one before us while transacting business within Oklahoma. In conjunction with the purchase of insurance and execution of the note, Mr. Mayes also executed a Statement of Understanding on a Reserve Life Insurance printed form which in part read:

"GENTLEMEN:

I understand that:

1. MY POLICY is in force and I am fully covered according to its terms and conditions until August 5, 1969, one (1) year from the Policy date. <u>The first year's premium was paid by means of my NOTE plus my down payment. I understand the terms of my NOTE.</u>

<u>2. MY NOTE (dated August 5, 1968) is payable directly to the VIP Investment Corporation, P. O. Box 6308, Dallas, TX 75222.</u> The principal amount is $371.38, plus simple interest of six (6) per cent annum (interest is tax deductible), and is not due until August 5, 1973. I can exercise the privileges of paying my NOTE in part or in full prior to the due date, and same proportionately on the simple interest. (My cancelled check or money order will serve as my receipt of payments.)" [Emphasis added].

Again, we see a printed form of Reserve Life Insurance Company, which in the standard *printed language shows V.I.P.'s interest* in the note—with all payments on the note directly payable to V.I.P. Investment Corporation.

Viewing the transaction as a whole, we hold that Mr. Houston, in selling Mr. Mayes' policy, and the other policies mentioned in the testimony at trial, was acting as an agent on behalf of V.I.P. Investment Corporation, as he *secured loans on behalf of that corporation*. In so holding, we note that the intent of the parties as shown by the documents before us was that the debt on

the note would be due and owing to V.I.P. Investment Corporation, from the time the note was executed. Although the note itself recited that the payee was James L. Houston, the note also immediately indicates that the payments are to be made at the office of V.I.P. Investment Corporation. Additionally, the accompanying document executed by both Mr. Houston and Mr. Mayes stated that payments were to be made directly to V.I.P. from the outset. Although the form of the instruments suggests that the transaction accompanying the sale of the insurance policy was the execution of a note to agent Houston, with agent Houston subsequently assigning it to V.I.P., an examination of the substance of the transaction demonstrates that the transaction was in actuality the execution of a note by which the insured became indebted to V.I.P. and not to agent Houston, who was payee in form only.

Viewing the note transaction as one between the insured Mayes and the actual lender, V.I.P. Investment Corporation, we hold that Houston acted on behalf of V.I.P. Corporation, soliciting loans for that corporation. Accordingly, we hold that V.I.P. Investment Corporation was, at the time of the execution of the note, "doing business" within the State of Oklahoma. Because V.I.P. Corporation was doing business in the State of Oklahoma, and because it was *not domesticated*, nor has it ever become domesticated, it is precluded from initiating suits within the State of Oklahoma, until such time as it becomes domesticated. As such, it did not have standing to bring the action initiated in the trial court, thus the proceeding in the trial court must be given no force and effect, as the question of standing was raised at the trial court level, and again raised on appeal. This being the case, we reverse the verdict and judgment of the trial court.

REVERSED.

HODGES, C. J., LAVENDER, V. C. J., and IRWIN, BERRY, BARNES and SIMMS, JJ., concur.

DOOLIN, J., concurs in results.